B104 (FORM 104) (08/07)

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (For Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>**John Edward Small, Jr.**<br>**2408 Bainbridge Street**<br>**Richmond, VA 23225** | **DEFENDANTS**<br>**PHH Mortgage Corporation**<br>**Samuel I. White, Trustee** |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>**Keith L. Phillips 18596**<br>**PHILLIPS & FLECKENSTEIN, P.C.**<br>**311 South Boulevard**<br>**Richmond, VA 23220-5705**<br>**(804) 358-9400 Fax: (804) 358-9089** | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUES INVOLVED)
**Strip an unsecured lien under 11 U.S.C. 506**

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
[ ] 11-Recovery of money/property - §542 turnover of property
[ ] 12-Recovery of money/property - §547 preference
[ ] 13-Recovery of money/property - §548 fraudulent transfer
[ ] 14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
[ X ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
[ ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
[ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
[ ] 51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
[ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[ ] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
[ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) - Dischargeability (continued)**
[ ] 61-Dischargeability - §523(a)(5), domestic support
[ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
[ ] 63-Dischargeability - §523(a)(8), student loan
[ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
[ ] 65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
[ ] 71-Injunctive relief - imposition of stay
[ ] 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
[ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
[ ] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
[ ] 01-Determination of removed claim or cause

**Other**
[ ] SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
[ ] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | | BANKRUPTCY CASE NO. |
|---|---|---|
| John Edward Small, Jr. | | 10-37875 |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| Eastern District of Virginia | Richmond | K.R. Huennekens |

## RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| | | |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| | | |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

/s/ Keith L. Phillips

Keith L. Phillips 18596

| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|
| May 4, 2012 | Keith L. Phillips 18596 |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Software Copyright (c) 1996-2011 CCH INCORPORATED - www.bestcase.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

**In Re: John Edward Small, Jr.**

**Debtor.**

**Case No. 10-37875-KRH**
**Chapter 13**

**John Edward Small, Jr.,**

**Plaintiff.**

**v.**

**APN:**

**PHH Mortgage Corporation**
**Samuel I White, Trustee,**
**Defendants.**

**COMPLAINT OF THE DEBTOR PURSUANT TO 11 U.S.C. SECTION 506(a) AND BANKRUPTCY RULE 3012 TO DETERMINE THE VALUE OF SECURITY AND CREDITOR'S ALLOWED SECURED CLAIM**

**COMES NOW** the Plaintiff, by counsel, and for his complaint respectfully represents as follows:

1. This is an action brought by the Plaintiff pursuant to 11 U.S.C. § 506(a) and F.R.Bankr.P. 3012 to determine the value of the interest of the Defendant in the residential real estate of the debtors and determine the amount of the allowed secured claim of the Defendant.

**JURISDICTION, VENUE AND CORE PROCEEDING**

2. The Plaintiff alleges that this is a core proceeding as that term is defined by 28 U.S.C. § 157(b)(2) in that it concerns claims and matters arising out of the administration of this bankruptcy case and rights duly established under Title 11 of the United States Code and other applicable federal law.

Keith L. Phillips, Esq. VSBN 18596, keith@pf-law.com
Phillips & Fleckenstein, PC.
311 South Boulevard
Richmond, VA 23220
804.358-9400 office, 804.358-9089 fax

3. The Plaintiff further alleges that this Court has both personal and subject matter jurisdiction to hear this case pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(2).

4. The Plaintiff further alleges that venue is properly laid in this district pursuant to 28 U.S.C. §1391 (b) and (c).

## PARTIES

5. Plaintiff John Edward Small, Jr. (hereinafter "Plaintiff") is a Debtor-in-Bankruptcy pursuant to 11 U.S.C. §101(13).

6. Upon information and belief, defendant, PHH Mortgage Corporation (hereinafter "PHH") is a creditor, pursuant to 11 U.S.C. §101(10)(A).

7. Upon information and belief, defendant, PHH, is a bank chartered under the laws of the United States, registered with the State Corporation Commission, with a Registered Agent, and may be served at: Corporation Service Company, Bank of America Center, 16th Floor, 1111 E. Main St., Richmond, VA 23219.

8. Upon information and belief, defendant Samuel I. White is the Trustee under a recorded Deed of Trust for defendant PHH.

9. Upon information and belief, defendant, Samuel I. White may be served at 5040 Corporate Woods Dr., Virginia Beach, VA 23462.

## FACTS

10. The Plaintiff commenced this case by filing, on November 12, 2010, a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code, in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division.

11. The Plaintiff owns real estate situated in the City of Richmond, Virginia known as 2408 Bainbridge St. by way of Deed recorded in the Circuit Court of the City of Richmond, Virginia as Instrument No. 06-23087. The legal description of that property is as follows:

Keith L. Phillips, Esq. VSBN 18596, keith@pf-law.com
Phillips & Fleckenstein, PC.
311 South Boulevard
Richmond, VA 23220
804.358-9400 office, 804.358-9089 fax

All that certain lot or parcel of land with improvements thereon and appurtenances thereto belonging, lying and being in the City of Richmond, Virginia, known and designated as 2408 Bainbridge Street, all as shown on a plat of Survey made by A.G. Harocopos and Associates, P.C. certified land surveyor and consultant, dated March 14, 1979, in Deed Book 552, page 2529, among the land records of the City of Richmond, VA, which plat reference is hereby made for a more particular description of the property hereby conveyed.

12. The Defendant is the holder of a promissory note executed by the Plaintiff secured by a Deed of Trust at Instrument No. 06-23089 (See Exhibit "A").

a.) The beneficiary under the Deed of Trust is Mortgage electronic Registration Systems, Inc. Payments are now serviced by PHH.

b.) The trustee for the Deed of Trust is Samuel I. White.

13. At the time of the Bankruptcy, the principal residence was worth no more than $128,260.00 (see Exhibit "B") and was subject to a first Deed of Trust with a payoff of approximately $136,440.54 (see Exhibit "C") at Instrument No. 06-23088.

14. No security exists for any Deed of Trust other than the first. All liens other than the first deed of trust are not "secured only by a security interest in real property that is the debtor's principal residence." Therefore, the Plaintiff is not barred from modifying his rights under 11 U.S.C. 1322(b)(2).

15. Pursuant to 11 U.S.C. Section 506(a), the Defendant has no allowable secured claim regarding the claim for the second mortgage loan on the subject real estate.

16. Any timely filed claim of the Defendants for the second mortgage loan is allowable only as an unsecured claim and to the extent that no such claim was filed the Defendant has no claim against this estate.

**WHEREFORE**, the Plaintiff respectfully requests of the Court as follows:

Keith L. Phillips, Esq. VSBN 18596, keith@pf-law.com
Phillips & Fleckenstein, PC.
311 South Boulevard
Richmond, VA 23220
804.358-9400 office, 804.358-9089 fax

A. That this Court determine that the Defendant has no secured interest for the loan secured by the second deed of trust on the residential real estate of the Debtor;

B. That this Court order the Defendant to cancel the second mortgage lien on the residential real estate of the debtor pursuant to 11 U.S.C. § 506(d), immediately upon the entry of the Discharge Order and deliver the same to the attorney for the debtor within 20 days from the date of the entry of the said order at no charge or fee for the aforesaid cancellation and delivery;

C. That this Court direct the Trustee that any timely filed proof of claim of the Defendant for the second mortgage lien be treated as an unsecured claim under the plan;

D. That the attorney for the Plaintiff be awarded reasonable legal fees;

E. That the Plaintiff has such other and further relief as to the Court may seem just and proper.

Respectfully Submitted,

John Edward Small, Jr.

BY COUNSEL: /s/ Keith L. Phillips, Esq.

Keith L. Phillips, Esq., VSB 18596
PHILLIPS & FLECKENSTEIN, PC
311 South Boulevard
Richmond, VA 23220
(804) 358-9400, (804) 358-9089 (fax)

FORM B10

Case Number:

# UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF VA

# PROOF OF CLAIM

EXHIBIT A

Name of Debtor JOHN EDWARD SMALL, JR.

Case Number 10-37875\KRH

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
PHH MORTGAGE CORPORATION

Name and address where notices should be sent:
PHH Mortgage Corporation
2001 Bishops Gate Blvd.
Attn: Mail Stop SV-01
Mount Laurel, New Jersey 08054

Telephone Number:

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:
Loan Number: XXXXXX9051 Atty File #: 10-208780V

Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated:

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☒ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other: ____________
Note on 2408 BAINBRIDGE STREET, Richmond, VA 23225

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)

☐ Wages, salaries, and compensation (Fill out below)
Last Four Digits of SS#: ________
Unpaid compensation for services performed from ____________ (date) to ____________ (date)

**2. Date Debt was incurred** July 7, 2006

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at time case filed:** $__________ (unsecured) $ 26,951.10 (secured) $__________ (priority) $ 26,951.10 (total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**5. Secured Claim**

☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:

☒ Real Estate ☐ Motor Vehicle
☐ Other ____________
Note on: 2408 BAINBRIDGE STREET, Richmond, VA 23225

Value of Collateral: $____________

Amount of arrearage and other charges at time case filed Included in secured claim, if any $1,940.18

**6. Unsecured Nonpriority Claim $**____________

☐ Check this box if: a) There is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim**

☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $____________
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,925),* earned within 90 days within filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a-_______).

Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

Date
March 10, 2011

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):

By: CHERAN D. CORDELL VSB#65361
TRENITA JACKSON STEWART VSB#48412
for PHH Mortgage Corporation
Shapiro & Burson, 236 Clearfield Avenue, Suite 215, Virginia Beach, VA 23462
(757) 687-8777 FAX: (757) 687-8810

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

Exhibit "A"

In Re: JOHN EDWARD SMALL, JR. and
Case No. 10-37875\KRH
Creditor: PHH MORTGAGE CORPORATION

Principal Balance:$ 25,030.12 Date on POC: March 10, 2011

| | | | |
|---|---|---|---|
| No. of Months 8 | X Monthly Payment of April 1, 2010 to November 1, 2010 | 194.40 | = $1,555.20 |
| Accrued Late Charges | | | $87.48 |
| Appraisal Fees | | | $125.00 |
| NSF Check Charges | | | $0.00 |
| Property Inspection | | | $22.50 |
| Property Preservation | | | $0.00 |
| Escrow Advance | | | $0.00 |
| Suspense | | | - $0.00 |
| | | TOTAL= | $1,790.18 |
| Prior Bankruptcy Fees | | | $0.00 |
| Prior Bankruptcy Costs | | | $0.00 |
| Prior Foreclosure Fees | | | $150.00 |
| Prior Foreclosure Costs | | | $0.00 |

TOTAL PRE-PETITION ARREARAGES AND ATTORNEY FEES AND COSTS DUE FOR PROOF OF CLAIM: $1,940.18

Creditor: PHH Mortgage Corporation
C/O PHH Mortgage Corporation
2001 Bishops Gate Blvd.
Attn: Mail Stop SV-01
Mount Laurel, New Jersey 08054

Attorney:
Shapiro & Burson, LLP
236 Clearfield Avenue, Suite 215
Virginia Beach, VA 23462
10-208780V

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

Exhibit "B"

In Re: JOHN EDWARD SMALL, JR. and
Case No. 10-37875\KRH
Creditor: PHH MORTGAGE CORPORATION
Date: March 10, 2011

The total amount of the Debt owed by the Debtor(s) to the Claimant is as follows:

| | |
|---|---|
| Unpaid Principal Balance: | $25,030.12 |
| Interest from March 1, 2010 | $1,536.00 |
| Late Charges: | $0.00 |
| Accrued Late Charges: | $87.48 |
| NSF check Charges: | $0.00 |
| Appraisal Fee: | $125.00 |
| Property Preservation fee: | $0.00 |
| Property Inspection Fees: | $22.50 |
| Escrow Shortage: | $0.00 |
| Suspense | $- 0.00 |
| Foreclosure Fees & Costs: | $150.00 |
| Previous Bankruptcy Fees & Costs: | $0.00 |
| Total Indebtedness as of March 10, 2011 | $26,951.10 * |

Creditor: PHH Mortgage Corporation
C/O PHH Mortgage Corporation
2001 Bishops Gate Blvd.
Attn: Mail Stop SV-01
Mount Laurel, New Jersey 08054

Attorney:
Shapiro & Burson, LLP
236 Clearfield Avenue, Suite 215
Virginia Beach, VA 23462
10-208780V

*** Not To Be Used for Payoff Purposes**

Case 10-37875-KRH Claim 10 Part 2 Filed 07/10/11 Desc Exhibit(s) DEED OF TRUST Page 1 of 6

PG0607 JUL-7

06-23089

Record 3rd

Return To: Century 21(R) Mortgage (SM) 9700 Bissonnet Street, Suite #1500, HOUSTON, TX 77036

Prepared by: Theresa Holmes

Tax Map Reference #:

RPC/Parcel ID #:

# DEED OF TRUST

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

THIS DEED OF TRUST is made this 30th day of June, 2006, among the Grantor, John E Small JR, AN UNMARRIED MAN

(herein "Borrower"),

Samuel White,
a resident of the Commonwealth of Virginia, whose full residence or business address is 130 Business Park Drive, Virginia Beach, VA 23462,
and,
a resident of the Commonwealth of Virginia, whose full residence or business address is (any one of whom may act and who are referred to herein as "Trustee"), and the Beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. Century 21(R) Mortgage Corporation (SM)

("Lender") is organized and existing under the laws of New Jersey,
and has an address of 3000 Leadenhall Road Mount Laurel, NJ 08054.

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the RICHMOND CITY, State of Virginia:

which has the address of 2408 BAINBRIDGE STREET [Street]
RICHMOND [City], Virginia 23225 [ZIP Code]
(herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply

such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property". Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated June 30, 2006 and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ 25,875.00, with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on July 1st, 2021; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

Case 10-37875-KRH Claim 10 Part 2 Filed 03/10/11 Desc Exhibit(s) DEED OF TRUST

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the

PG0610 JUL-7 8

Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and the owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which the Property or some portion thereof is located, and by such additional or different form of advertisement as the Trustee may deem advisable, if any. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or Lender's designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold with special warranty of title. The recitals in Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, Trustee's fees of** 5.00% **of the gross sale price, reasonable attorneys' fees and costs of title evidence; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Deed of Trust; and (d) the excess, if any, to the person or persons legally entitled thereto. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at such sale.**

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

Case 10-37875-KRH Claim 10 Part 2 Filed 03/10/11 Desc Exhibit(s) DEED OF TRUST Page 6 of 6

PG0811 JUL-78

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to release this Deed of Trust and shall surrender all notes evidencing indebtedness secured by this Deed of Trust. Trustee shall release this Deed of Trust to Trustee without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender may from time to time in Lender's discretion remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Identification of Note.** The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgment hereto.

**REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed and sealed this Deed of Trust.

[signature] (Seal)
John H Small JR -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

*(Sign Original Only)*

STATE OF VIRGINIA, RICHMOND CITY County, ss:
The foregoing instrument was acknowledged before me this June 30th, 2006
by John H Small JR

My Commission Expires:

Amy Porterfield
Notary Public
Commonwealth of Virginia
Commission Expires 02/28/09

[signature]
Notary Public

PG0612 JUL-7

# SCHEDULE "A"

ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, WITH IMPROVEMENTS THEREON AND APPURTENANCES THERETO BELONGING, LYING AND BEING IN THE CITY OF RICHMOND, VIRGINIA, KNOWN AND DESIGNATED AS 2408 BAINBRIDGE STREET, ALL AS SHOWN ON A PLAT OF SURVEY MADE BY A. G. HAROCOPOS AND ASSOCIATES, P.C., CERTIFIED LAND SURVEYOR AND CONSULTANT, DATED MARCH 14, 1979, A COPY OF WHICH IS RECORDED IN DEED FROM ROBERT B. SMITH, II, UNMARRIED, ET ALS, TO DAVID TOWNSEND, RECORDED MARCH 23, 1979, IN DEED BOOK 552, PAGE 2529, AMONG THE LAND RECORDS OF THE CITY OF RICHMOND, VA., WHICH PLAT REFERENCE IS HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION OF THE PROPERTY HEREBY CONVEYED.

INSTRUMENT #060023089
RECORDED IN THE CLERK'S OFFICE OF
CITY OF RICHMOND ON
JULY 7, 2006 AT 12:52PM
BEVILL M. DEAN, CLERK

RECORDED BY: KXB

Case 10-37875-KRH ... Filed ... Desc Exhibit(s) NOTE Page 1 of 3

# BALLOON NOTE

**This loan has a large balloon payment due at maturity. In 15 years, you will be required to repay the entire principal balance and interest then due. The lender is under no obligation to refinance the loan at that time. You will therefore be required to make payment out of other assets that you may own, or you will have to find a lender, which may be the lender you have this loan with, willing to lend you the money. If you refinance the loan at maturity, you may have to pay some or all of the closing costs normally associated with a new loan even if you obtain refinancing from the same lender.**

| June 30, 2006 | RICHMOND | Virginia |
|---|---|---|
| *Date* | *City* | *State* |

2408 BAINBRIDGE STREET RICHMOND, VA 23225

*Property Address*

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S $25,875.00 (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is Century 21(R) Mortgage Corporation (SM) . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

**2. INTEREST**

I will pay interest at a yearly rate of 8.250%

Interest will be charged on unpaid principal until the full amount of principal has been paid.

**3. PAYMENTS**

I will pay principal and interest by making payments each month of U.S $194 40 .

I will make my payments on the 01st day of each month beginning on August 1st, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on July 1st, 2021 , I still owe amounts under this Note, I will pay all those amounts, in full, on that date

I will make my monthly payments at 3000 Leadenhall Road Mount Laurel, NJ 08054 or at a different place if required by the Note Holder.

**4. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any of my monthly payments by the end of Seven calendar days after the date it is due, I will pay a late charge to the Note Holder The amount of the charge will be 5.00% of my overdue payment, but not less than U S $9 72 and not more than U S $9 72 I will pay this late charge only once on any late payment

**(B) Notice from Note Holder**

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

**(C) Default**

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe under that amount

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**5. THIS NOTE SECURED BY A DEED OF TRUST**

In addition to the protections given to the Note Holder under this Note, a Deed of Trust dated June 30, 2006, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Initials



Case 10-37875-KRH Claim 10 Part 3 Filed 03/17/11 Desc Exhibit(s) NOTE Page 2 of 3

**6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE**

I have the right to make payments of principal at any time before they are due A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under the Note If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

**7. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"), (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8. GIVING OF NOTICES**

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address

**9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note Any person who takes over my rights or obligations under this Note will have all my rights and must keep all of my promises made in this Note Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

**10. HOMESTEAD EXEMPTION**

I waive my Homestead Exemption

John E Small JR (Seal) -Borrower | (Seal) -Borrower

(Seal) -Borrower | (Seal) -Borrower

(Seal) -Borrower | (Seal) -Borrower

(Seal) -Borrower | (Seal) -Borrower

This is to certify that this is the Note described in and secured by a Deed of Trust dated June 30, 2006, on the Property located in RICHMOND CITY, Virginia

My Commission Expires:

Notary Public

C095-2VA (062404)

Case 10-37875-KRH Claim 10 Part 3 Filed 03/10/11 Desc Exhibit(s) NOTE Page 3 of 3

# SIGNATURE/NAME AFFIDAVIT

DATE. June 30, 2006

LOAN #·

BORROWER. John E Small JR

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

| John E Small JR | |
|---|---|
| (Print or Type Name) | Signature |

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

| | |
|---|---|
| (Print or Type Name) | Signature |
| (Print or Type Name) | Signature |
| (Print or Type Name) | Signature |
| (Print or Type Name) | Signature |

and that are one and the same person.

State/Commonwealth of VA
County/Parish of RICHMOND CITY

Subscribed and sworn (affirmed) before me
this 30th day of June , 2006

Notary Public in and for
the State/Commonwealth of VA
County/Parish of RICHMOND CITY
My Commission Expires





EXHIBIT
B

SOLD

November 09, 2010

John Small

2408 Bainbridge St.
Richmond, VA 23226

Dear John,

I appreciate the opportunity to provide you with a Comparative Market Analysis for your property. Prepared exclusively for you, this analysis contains a summary of the recent real estate transactions in your area for properties that are similar to yours. While none of the properties included in this analysis is exactly like yours, they do provide a good basis by which to compare your property with the 'competition'.

The following pages contain descriptions of each property whether it is currently available for sale, recently sold, or was listed but did not sell. A short description of each property is provided, followed by a summary table of each property's key features, which allows you to easily compare the features of your property with others in your area.

Your property may have special features or improvements that could substantially affect the price range in which it should be listed. We will discuss pricing in more detail after you have had a chance to review the enclosed information.

Please give me a call if you have any questions or would like any additional information. I look forward to working with you and selling your property quickly.

Sincerely,

**Sherry S Ligh**
**Century 21 Option 1 Realty**
8600 Quioccasin Rd Ste 200
Richmond, VA 23229
Office: (804) 402-7769
Fax: (804) 270-0717
sherry.ligh@comcast.net
Web Site: http://RichmondDowntown.com



**Prepared for John Small**

## General Facts About Pricing...

We have done a full Comparable Market Analysis study for the market value of your home. A Comparable Market Analysis (CMA) is not an appraisal. A CMA is very useful in arriving at a fair market price for a particular property by comparing that property to other properties in that same area that have sold with relation to a specific time frame, location, style, square footage and special amenities. However, an appraisal opinion would be the best resource for our best price in value. In today's "Buyer's Market" PRICING IS KEY and critical in selling any property. If a Seller is getting the MAXIMUM exposure and every marketing option, and their home does not sell, then it is the result of pricing that home too high.

A property priced at market value will attract more buyers than a home priced above market value. Consider that a competitively priced property will also attract a greater number of potential buyers and increase your opportunity for a quick sale.

## Market Statistics...

| Sell Price Statistics | | Sell Price Per Sq. Ft. Statistics | | |
|---|---|---|---|---|
| **Average Price:** | $161,700 | **Average Price/Sq Ft:** | $96.81 x 1,224 | $118,500 |
| **High Price:** | $220,000 | **High Price/Sq Ft:** | $122.22 x 1,224 | $149,600 |
| **Median Price:** | $168,800 | **Median Price/Sq Ft:** | $104.72 x 1,224 | $128,200 |
| **Low Price:** | $89,300 | **Low Price/Sq Ft:** | $55.57 x 1,224 | $68,000 |

Figures are based on selling price after adjustments, and rounded to the nearest $100.

## Summary...

Analysis of the selected comparable properties suggest similar properties are selling in the price range of: **$89,300 to $220,000**

## Recommend Price: $128,260

**Sherry S Ligh, Century 21 Option 1 Realty**
8600 Quioccasin Rd Ste 200, Richmond, VA 23229
Office: (804) 402-7769 | Fax: (804) 270-0717



| Comparable Address | # Beds | SqFt | Days on Market | List Price | Sale Price |
|---|---|---|---|---|---|
| 2509 Bainbridge ST | 3 | 3 | 192 | $124,500 | $124,500 |
| 307 W 26th St | 3 | 3 | 194 | $129,900 | $89,250 |
| 613 W 21st St | 2 | 2 | 30 | $225,000 | $213,000 |
| 1413 Porter ST | 4 | 4 | 114 | $229,950 | $220,000 |

**Sherry S Ligh, Century 21 Option 1 Realty**
8600 Quioccasin Rd Ste 200, Richmond, VA 23229
Office: (804) 402-7769 | Fax: (804) 270-0717

No Photo Available

Single Family
2408 Bainbridge St
State: Zip: 23225
Style:
Rms: 5 Beds: 3
Map:
Elem Sch:

No Showings Until:
Home Warranty:

Status:

YrBlt: 1765

# FP: 1 F/H Bths:
Acres: 0.7321
Mid Sch:

Area:
Co/City: Richmond
Subd:

LP:
LD:

New/Resale:
Gar:
Fin SF +/-: 1,224
High Sch:
Other Sch:
SD:
Sales Price:

Directions:

Remarks:

2930406

1 / 10

CVRMLS

Single Family
2509 Bainbridge ST
State: VA Zip: 23225
Style: Colonial
Rms: 8 Beds: 3
Map: 315D9
Elem Sch: Blackwell

No Showings Until:
Home Warranty: 1YR 1ST AM

Status: Sold

YrBlt: 1916

# FP: 0 F/H Bths: 1/1
Acres: 0.1215
Mid Sch: Thompson

Area: 60
Co/City: Richmond
Subd: Hollands Addition

LP: $124,500
LD: 09/26/2009

New/Resale: Resale (occupied at least once)
Gar:
Fin SF +/-: 1,408
High Sch: Armstrong
Other Sch:
SD: 05/18/2010
Sales Price: $124,500

Directions: Midlothian or Hull Street East-When Midlothian & Hull meet take left on Clopton-Make 2nd right on Bainbridge home on left-on & off St. parking

Remarks: PRICE JUST REDUCED!!RENOVATED AND RESTORED COMPLETELY! THIS HOME HAS BEEN MODERNIZED WITH ALL OF TODAY'S AMMENITIES. VINYL SIDING EXTERIOR, THERMAL INSULATED TILT WINDOWS, NEW FLOORING THOUGHOUT, NEW DOORS, NEW FIXTURES,NEW TRIM AND PAINT. ALL ELECTRIC UPDATED TO 200 AMP,ALL NEW PLUMBING, BEAUTIFUL NEW CABINETRY IN THE KITCHEN WITH GRANITE TILE COUNTERTOPS, ACCOMPANIED WITH A BRAND NEW RANGE,MATCHING DISHWASHER, AND MICROWAVE. FEATURING 3 BEDROOMS, ONE STUDY OR OFFICE, 1 FULL BATH AND ONE HALF BATH--BOTH WITH ALL NEW HARDWARE. FRONT AND REAR PORCHES. NEW GAS FURNACE WITH CENTRAL AIR, NEW HOT WATER TANK. SELLER TO CONSIDER OWNER FINANCING OR LEASE PURCHASE. OFF STREET PARKING, PARTIAL FENCED REAR YARD. SECURITY SYSTEM(ACTIVE). TRULY A DELIGHT TO SEE. CALL TODAY TO SCHEDULE YOUR SHOWING.

All Information Deemed Reliable but not Guaranteed. Copyright Marketlinx, Inc. 1997- 2009 All Rights Reserved V5.0.

Generated By: Sherry Ligh Century 21 Option 1 Realty (804) 402-7769 November 09, 201001:54 PM

**2931646** Single Family **Status:** Sold **Area:** 60 **LP:** $129,900

307 W 26th St **Co/City:** Richmond **LD:** 10/08/2009

**State:** VA **Zip:** 23225 **YrBlt:** 1900 **Subd:** Woodland Heights

**Style:** 2-Story **New/Resale:** Resale (occupied at least once)

**Rms:** 7 **Beds:** 3 **# FP:** 1 **F/H Bths:** 1/1 **Gar:**

**Map:** 135 D1 **Acres:** **Fin SF +/-:** 1,606

**Elem Sch:** Blackwell **Mid Sch:** Thompson **High Sch:** Armstrong

**Other Sch:**

**No Showings Until:** **SD:** 05/20/2010

**Home Warranty:** **Sales Price:** $89,250

**Directions:** E on W Broad, R N Belvidere, R Semmes Ave, L W 26th.

**Remarks:** 2-Story-Richmond.Fenced back yard w/screened porch.3 Bdrms&1.5 baths,fireplace &newer kitchen.Seller requires lender letter be w/all offers & from 'DIRECT ENDORSEMENT LENDER.' Fannie Mae Homepath Prop!Purchase this prop 4 as little as 3 percent down!Prop approved 4 HomePath Mortgage and Renovation Mortgage Financing.**SEE ATTACHMENT FOR FANNIE MAE INCENTIVE**

**1019110** Single Family **Status:** Sold **Area:** 60 **LP:** $225,000

613 W 21st St **Co/City:** Richmond **LD:** 06/10/2010

**State:** VA **Zip:** 23225 **YrBlt:** 1920 **Subd:** Bellevue

**Style:** 2-Story, Colonial **New/Resale:** Resale (occupied at least once)

**Rms:** 7 **Beds:** 2 **# FP:** 2 **F/H Bths:** 2/0 **Gar:**

**Map:** 135-C2 **Acres:** 0.2580 **Fin SF +/-:** 1,760

**Elem Sch:** Blackwell **Mid Sch:** Thompson **High Sch:** Armstrong

**Other Sch:**

**No Showings Until:** **SD:** 09/10/2010

**Home Warranty:** **Sales Price:** $213,000

**Directions:** Robert E Lee bridge to Right on Semmes Avenue to Right on West 21st Street, house on the right in the second block.

**Remarks:** Everyone in the neighborhood loves this one! Charming home built in 1920, located in the Spring Hill Historic District (Woodland Heights Area) just 2 blocks from the river, super convenient to Downtown Richmond! Off street parking - 3 spaces! 6 Foot privacy fence - triple lot - with patio - 2 sheds - one is 160sqft Amish built with electricity, great workshop/art studio or home office! Landscaping includes roses & herb garden! This is a rare sized private lot! Inside - everything has been updated without loosing the historic character and feel of the home. 2 Full baths! NEWER Kitchen appliances! Master BR has walk in closet! Walk-out English Basement includes Bar- perfect den/family room. If you love older homes but don't want the work and "re-do", this one is it! SELLERS MOTIVATED!

All Information Deemed Reliable but not Guaranteed. Copyright Marketlinx, Inc. 1997- 2009 All Rights Reserved V5.0.

| 2928389 | Single Family | Status: Sold | Area: 60 | LP: $229.950 |
|---|---|---|---|---|
|  | 1413 Porter ST | | Co/City: Richmond | LD: 09/08/2009 |
| | State: VA Zip: 23224 | YrBlt: 2009 | Subd: None | |
| | Style: 2-Story, Farm House | | New/Resale: New (never occupied) | |
| | Rms: 8 Beds: 4 | # FP: | F/H Bths: 3/0 | Gar: |
| | Map: 135 C2 | Acres: 0.1081 | | Fin SF +/-: 1,800 |
| | Elem Sch: Blackwell | Mid Sch: Thompson | | High Sch: Armstrong |
| | | | | Other Sch: |
| | No Showings Until: | | | SD: 01/29/2010 |
| | Home Warranty: | | | Sales Price: $220.000 |

**Directions:** Semmes Avenue to 14th Street to Right on Porter Street

**Remarks:** WOW!!! Incredible NEW home with TONS of AMENITIES! This is a cert. Earth Craft home that features the latest in building technology while preserving the architectural style in keeping with the neighborhood. Bright, open floor plan with L/R, STUNNING kitchen with granite, stainless and maple cabs, adjacent dining/family room with deck access AND den/study or 4th BRDM also with rear porch access and a full bath. Upstairs features 3 add'l BDRMS including a spacious master with walk-in closet and private bath plus the 3rd full bath. All 3 FULL BATHS feature ceramic tile, tub/showers and maple vanities. Hardwood floors throughout, low maintenance HardiPlank siding, reproduction trim and cornice, front and rear covered porches, large fenced yard. A MUST SEE!!

All Information Deemed Reliable but not Guaranteed. Copyright Marketlinx, Inc. 1997- 2009 All Rights Reserved V6.0.

Generated By: Sherry Ligh Century 21 Option 1 Realty (804) 402-7769 November 09, 201001:55 PM

ANY ATTACHMENTS MUST BE 8-1/2 X 11"

B 10 (Official Form 10) (04/10)

**UNITED STATES BANKRUPTCY COURT** EASTERN **DISTRICT OF** VIRGINIA

**PROOF OF CLAIM**

Name of Debtor: Small, Jr., John Edward

Case Number: 10-37875-KRH

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): JPMorgan Chase Bank, N.A., c/o Chase Home Finance LLC as Servicing Agent

Name and address where notices should be sent:
3415 Vision Drive
oh4-7142
Columbus, OH 43219
Telephone number:

☐ Check this box to indicate that this

EXHIBIT C

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 136440.54

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Money Loaned
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 2957

**3a. Debtor may have scheduled account as:** ____________
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:**

**Value of Property:$** not avail. at this time **Annual Interest Rate** 6.529 %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $** 5224.16 **Basis for perfection:** ____________

**Amount of Secured Claim: $** 136440.54 **Amount Unsecured: $** 0.00

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$____________

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Date: 2/1/11

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

/s/Andrew T. Rich

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

The breakdown of the total pre-petition arrearages claimed is as follows:

|  | | |
|---|---|---|
| | Principal Balance | $131,216.38 |
| 08/10 - 11/10 | 4 Monthly mortgage payment(s) @ $1,052.59 | 4,210.36 |
| | Accumulated late charges | 306.18 |
| | Appraisal | 78.00 |
| | Escrow Deficit | 615.62 |
| | Property Inspection(s) | 14.00 |
| | | ----------- |
| | PRE-PETITION ARREARAGES | $  5,224.16 |
| | TOTAL AMOUNT CLAIMED | $136,440.54 |

THU 12:12 PM COLONIAL TITLE FAX No. 804-556-6703 P. 016

PG0591 JUL-78

06- 23088

Return To:
Century 21(R) Mortgage (SM)
9700 Bissonnet Street , Suite #1500, HOUSTON, TX 77036

Tax Map Reference #: 5000-0689/011
RPC/Parcel ID #:

Prepared By:

Record 2nd

Theresa Holmes, 3000 Leadenhall Road Mount Laurel, NJ 08054

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN [redacted]

Loan #: [redacted]

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by John E Small JR, AN UNMARRIED MAN

, as

Borrower (trustor), to Samuel White 130 Business Park Drive, Virginia Beach, VA 23462

, as

Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. as beneficiary.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS Form 3047 1/01

VMP -6A(VA) (0102).01

Page 1 of 15 Initials:

VMP MORTGAGE FORMS - (800)521-7291

PG0592 JUL-7 ☒

(A) "Security Instrument" means this document, which is dated June 30, 2006 together with all Riders to this document.

(B) "Borrower" is John E Small JR, AN UNMARRIED MAN

Borrower is the trustor under this Security Instrument.

(C) "Lender" is Century 21(R) Mortgage Corporation (SM)

Lender is a Corporation organized and existing under the laws of New Jersey
Lender's address is 3000 Leadenhall Road Mount Laurel, NJ 08054

(D) "Trustee" is Samuel White

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is 130 Business Park Drive, Virginia Beach, VA 23462
"Trustee" is

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated June 30, 2006
The Note states that Borrower owes Lender One Hundred Thirty-Eight Thousand Dollars and Zero Cents Dollars (U.S. $138,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than July 1st, 2036 . The interest rate stated in the Note is Six and Five Hundred Twenty-Nine / Thousandths percent ( 6.529 %).
If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in accordance with the attached Adjustable Rate Rider.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

Initials: JS

PG0593 JUL-78

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider ☐ Biweekly Payment Rider ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

250594 JUL-78

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of RICHMOND CITY [Name of Recording Jurisdiction]:

which currently has the address of 2408 BAINBRIDGE STREET [Street]
RICHMOND / RICHMOND CITY [City/County], Virginia 23225 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such

PG0596 JUL-7

amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the

PG0597 JUL-7

payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or

PG0598 JUL-78

condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage

Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

PG0600 JUL-7

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the

permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of

Initials: JB

PG0602 JUL-78

Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.**

PG0604 JUL-7

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

______________________________

______________________________

______________________________(Seal)
John E Small JR -Borrower

______________________________(Seal)
-Borrower

______________________________(Seal)
-Borrower

______________________________(Seal)
-Borrower

______________________________(Seal)
-Borrower

______________________________(Seal)
-Borrower

______________________________(Seal)
-Borrower

______________________________(Seal)
-Borrower

PG0605 JUL-7 08

STATE OF VIRGINIA, RICHMOND CITY County, ss:

The foregoing instrument was acknowledged before me this June 30th, 2006 by John E Small JR

My Commission Expires:

Notary Public

Amy Porterfield
Notary Public
Commonwealth of Virginia
Commission Expires 02/28/

060606 JUL-7 06

# SCHEDULE "A"

ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, WITH IMPROVEMENTS THEREON AND APPURTENANCES THERETO BELONGING, LYING AND BEING IN THE CITY OF RICHMOND, VIRGINIA, KNOWN AND DESIGNATED AS 2408 BAINBRIDGE STREET, ALL AS SHOWN ON A PLAT OF SURVEY MADE BY A. G. HAROCOPOS AND ASSOCIATES, P.C., CERTIFIED LAND SURVEYOR AND CONSULTANT, DATED MARCH 14, 1979, A COPY OF WHICH IS RECORDED IN DEED FROM ROBERT B. SMITH, II, UNMARRIED, ET ALS, TO DAVID TOWNSEND, RECORDED MARCH 23, 1979, IN DEED BOOK 552, PAGE 2529, AMONG THE LAND RECORDS OF THE CITY OF RICHMOND, VA., WHICH PLAT REFERENCE IS HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION OF THE PROPERTY HEREBY CONVEYED.

INSTRUMENT #060023088
RECORDED IN THE CLERK'S OFFICE OF
CITY OF RICHMOND ON
JULY 7, 2006 AT 12:51PM
BEVILL M. DEAN, CLERK

RECORDED BY: KXB

PB 0606 MAY 22 B

09 10873

Prepared By:
Record and Return to:
Chase Manhattan Mortgage Corporation
Attn: Mayra Rodriguez-Legal Department
4915 Independence Parkway, Floor 2
Tampa, FL 33634

P/C 1576 TAX #S000-0689/011

## LEGAL DESCRIPTION DEED OF TRUST MODIFICATION AGREEMENT AND CERTIFICATE OF PARTIAL SATISFACTION

This Agreement made and entered into by and between John E. Small, an unmarried man, hereinafter referred to as "Borrower", Samuel White, hereinafter referred as "Trustee" and Mortgage Electronic Registration Systems, Inc., ("MERS"), as the Beneficiary, acting solely as nominee for JPMorgan Chase Bank, N.A., which has an office located at 4915 Independence Highway, Floor 2, Tampa, FL 33634 hereinafter referred to as "Lender;"

WITNESSETH:

WHEREAS, Borrower and Mortgage Electronic Registration Systems, Inc., ("MERS"), as the Beneficiary, acting solely as nominee for Century 21 ® Mortgage Corporation (SM), the Original Lender, on the 30th day of June, 2006, entered into a certain deed of trust instrument (the "Deed of Trust") securing a note in the principal sum of One Hundred Thirty Eight Thousand and 00/100 ($138,000.00) (the "Note"), which Deed of Trust was recorded as Instrument Number 060023088, in the in the Clerk's Office of the Circuit Court of Richmond City, in the State of Virginia, in which Deed of Trust the lands securing said indebtedness were described as follows (the "Original Legal Description"), to-wit:

**SEE SCHEDULE "A"**

WHEREAS, The Original Legal Description (above) contains an error and must be amended by substituting the correct legal description;

WHEREAS, the following legally described property (the "Amended Legal Description") will replace the Original Legal Description and Borrower and Lenders have agreed to such amendments.

**SEE SCHEDULE "B"**

NOW THEREFORE, in consideration of the premises, the mutual agreements contained herein, and with the express understanding that said Deed of Trust now held by the Lender is a valid, first and subsisting lien which will not be impaired by this modification, it is agreed between the parties hereto that the legal description of the land securing said Deed of Trust is amended from the Original Legal Description to the Amended Legal Description.

0507 MAY 22

In addition, the parties hereto agree to the following:

1. The Lender hereby releases any property described in the Original Legal Description, which is not described in the Amended Legal Description from the lien of the Deed of Trust. The Deed of Trust will encumber the property described in the Amended Legal Description as if such property had originally been described in the Deed of Trust.

2. The Borrower hereby covenant, promise, agree, and reaffirm: a) to pay the Note at the times, in the manner, and in all respects as therein provided; (b) to perform each and all of the covenants, agreements, and obligations in said Deed of Trust to be performed by the Borrower therein, at the time, in the manner, and in all respects as therein provided; and to be bound by each and all of the terms and provisions of said Note and Deed of Trust.

3. This Agreement does not constitute the creation of a new debt nor the extinguishment of the debt evidenced by said Note, nor does it in any way affect or impair the lien of said Deed of Trust, which the Borrower acknowledge to be a valid and existing first lien against the real property described in the Amended Legal Description as if such property had been originally described in the Deed of Trust and the lien of said Deed of Trust is agreed to continue in full force and effect, and the same shall so continue until fully satisfied.

4. Notwithstanding anything herein to the contrary, this Agreement shall not affect nor impair any representation in regard to any warranty of title heretofore made by the Borrower, all of which shall remain in force and inure to the benefit of the Lender and any insurer of the title to the property described in the Amended Legal Description or the lien of the Deed of Trust thereon.

5. The word "Note" as used herein, shall be construed to mean note, bond, extension or modification agreement, or other instrument evidencing the indebtedness herein referred to, and to include such instrument whether originally made and delivered to the Lender or assigned and/or endorsed to the Lender; and the word "Deed of Trust" shall be construed to mean mortgage, deed of trust, loan deed, or other instrument securing the indebtedness herein referred to, and to include such instrument, whether originally made and delivered to the Lender as lender, or made and delivered to some other lender and purchased by the Lender and now owned by the Lender by virtue of any assignment to it. The "Borrower" referred to herein may be an original maker of the Note or any person obligated thereon by endorsement, assumption of debt, or otherwise.

This Agreement shall be binding upon and inure to the benefit of the parties hereto, their respective successors, heirs and assigns.

BK 0608 MAY 22 PG

IN WITNESS WHEREOF, the parties have hereunto set their hands.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), as the Beneficiary, acting solely as nominee for JPMORGAN CHASE BANK, N.A. ("LENDER")**

**BY:** ______________________
**Mayra Rodriguez**
**Assistant Secretary**

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH, TO WIT:

Subscribed, sworn to and acknowledged before me in the County of Hillsborough, State of Florida by Mayra Rodriguez-Assistant Secretary of Mortgage Electronic Registration Systems, Inc., ("MERS"), as the Beneficiary, acting solely as nominee for JPMorgan Chase Bank, N.A., as the Lender, this 10th day of November, 2008, on its behalf.

P. SANTANA
MY COMMISSION # DD 504778
EXPIRES: January 8, 2010
Bonded Thru Notary Public Underwriters

______________________
Notary Public: Priscilla Santana
My Commission Expires: 1/8/2010

PG 0609 MAY 22 8

"Trustee"

Samuel White, AS THE TRUSTEE

Samuel White

By: ______________________

It's: ______________________

STATE OF VIRGINIA

COUNTY OF Virginia Beach, TO WIT:

Subscribed, sworn to and acknowledged before me in the County of Virginia Beach State of Virginia by Samuel White, as Trustee, this 17th day of April, 2009, on its behalf.

Lori M. Homan

Notary Public: Lori M. Homan

My Commission Expires: June 30, 2012

Registration # 7201412

PG 0610 MAY 22 08

**BORROWER**

John E. Small, Jr.

STATE OF VIRGINIA

COUNTY OF RICHMOND CITY, TO WIT:

Subscribed, sworn to and acknowledged before me in the County of Richmond City, State of Virginia by John E. Small, Jr., as Borrower, this 22nd day of May, 2008, on its behalf.

Notary Public: 348697

My Commission Expires: 7/31/2013

M0611 MAY 22 8

# SCHEDULE "A"

ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, WITH IMPROVEMENTS THEREON AND APPURTENANCES THERETO BELONGING, LYING AND BEING IN THE CITY OF RICHMOND, VIRGINIA, KNOWN AND DESIGNATED AS 2408 BAINBRIDGE STREET, ALL AS SHOWN ON A PLAT OF SURVEY MADE BY A. G. HAROCOPOS AND ASSOCIATES, P.C., CERTIFIED LAND SURVEYOR AND CONSULTANT, DATED MARCH 14, 1979, A COPY OF WHICH IS RECORDED IN DEED FROM ROBERT B. SMITH, II, UNMARRIED, ET ALS, TO DAVID TOWNSEND, RECORDED MARCH 23, 1979, IN DEED BOOK 552, PAGE 2529, AMONG THE LAND RECORDS OF THE CITY OF RICHMOND, VA., WHICH PLAT REFERENCE IS HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION OF THE PROPERTY HEREBY CONVEYED.

BEING THE SAME REAL ESTATE CONVEYED TO WILLIAM H. MCWILLIAMS BY DEED FROM THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT, DATED FEBRUARY 12, 1998, RECORDED MARCH 13, 1998, AS INSTRUMENT NO. 980006364 IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OF RICHMOND CITY, VIRGINIA.

N 0612 MAY 22 S

SCHEDULE "B"

All that certain tract or parcel of land designated as #2408, containing 0.718 acres, as more fully shown on that certain "Plat Showing 0.718 Acre of Land South of Bainbridge Street and East of Clopton Street, Known as 2408 Bainbridge Street," dated June 22, 2006, Revisions: August 11, 2008 and September 25, 2008, prepared by Balzer & Associates, Inc., Planners-Architects-Engineers-Surveyors, a copy of which is recorded in the Clerk's Office of the Circuit Court for the City of Richmond, Virginia, in Plat Book ________, page 0918.

INSTRUMENT #090010873
RECORDED IN THE CLERK'S OFFICE OF
CITY OF RICHMOND ON
MAY 22, 2009 AT 03:16PM

BEVILL M. DEAN, CLERK
RECORDED BY: JRO